IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROBERT H.                                    )
                                             )
                    Plaintiff,               )
                                             )
        v.                                   )      1:23CV1039
                                             )
LELAND DUDEK                                 )
Acting Commissioner of Social Security,      )
                                             )
                    Defendant.               )

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Robert H. ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB in October 2021, alleging a disability onset date of January 15, 2021. (Tr. at 14, 217-18.)[1] Plaintiff's application was denied initially (Tr. at 101-11, 129-33) and upon reconsideration (Tr. at 112-24, 136-40). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 141-42.) On April 20, 2023, Plaintiff, along with his attorney, attended the subsequent

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #5].

telephonic hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 14, 32-71.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 27), and on October 4, 2023, the Appeals Counsel denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date, January 15, 2021. (Tr. at 17.) The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 17.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> degenerative disc disease of the cervical spine, status post anterior cervical discectomy and fusion (ACDF), degenerative disc disease of the lumbar spine, Crohn's disease with recurrent rectal fistulas, bilateral carpal tunnel syndrome, and ulnar neuropathy[.]

(Tr. at 17.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 18-19.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform a range of light work with the following, non-exertional limitations:

> [Plaintiff] can occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, and scaffolds. [He] can frequently climb ramps and stairs. He can frequently engage in bilateral handling, fingering, and overhead reaching. [Plaintiff] can tolerate occasional exposure to hazards, such as unprotected heights and

5

> moving machinery. Due to the frequency of bowel movements, [Plaintiff] will be off task for 5 percent of the workday, exclusive of regularly scheduled breaks.

(Tr. at 19.) At step four of the analysis, the ALJ found, based on the vocational expert's testimony, that all of Plaintiff's past relevant work exceeded his RFC. (Tr. at 25.) However, the ALJ further determined at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in significant numbers in the national economy. (Tr. at 26.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 27.)

Plaintiff now contends that the ALJ failed to properly explain his reasons for deviating from the RFC findings in a previous administrative decision, dated January 14, 2021 (Tr. at 72-100), as required by <u>Albright v. Commissioner of Social Security Administration</u>, 174 F.3d 473 (4th Cir. 1999) and Acquiescence Ruling ("AR") 00-1(4). Acquiescence Ruling 00-1(4) implements Albright in the Fourth Circuit, and provides that:

> where a final decision of SSA after a hearing on a prior disability claim contains a finding required at a step in the sequential evaluation process for determining disability, SSA must consider such finding as evidence and give it appropriate weight in light of all relevant facts and circumstances when adjudicating a subsequent disability claim involving an unadjudicated period.
> . . . .
> . . . In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

Acquiescence Ruling 00-1(4), (Interpreting <u>Lively v. Secretary of Health and Human Services</u>)—<u>Effect of Prior Disability Findings on Adjudication of a Subsequent Disability</u>

Claim—Titles II and XVI of the Social Security Act, 2000 WL 43774, at *4 (Jan. 12, 2000); see also Albright, 174 F.3d at 476.

Here, the ALJ specifically noted that the requirement that adjudicators in subsequent disability claims must consider a prior administrative finding as evidence "and give it appropriate weight in light of all relevant facts and circumstances." (Tr. at 15.) The ALJ, citing both Albright and AR 00-1(4), asserted that he

> considered such factors as (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of [Plaintiff's] medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision of the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

(Tr. at 15.)

Ultimately, the ALJ concluded that, in the present case, "the presence of new and material evidence requires changes to the prior [RFC]." (Tr. at 15.) The ALJ addressed this evidence further when assessing Plaintiff's RFC. Specifically, he found that

> there has been new evidence demonstrating increased limitations in [Plaintiff's] abilities. For example, [Plaintiff] was seen by Guilford Neurologic Associates on January 18, 2023, reporting pain in both hands and some numbness. He reported shaking it out and rubbing made it better. At this time, he reported only mild pain. [Plaintiff] had electromyography/nerve conduction testing on March 30, 2023, which revealed moderate bilateral ulnar neuropathy at the elbows. [Plaintiff] was also found to have moderately severe right carpal tunnel syndrome and mild left carpal tunnel syndrome. This is consistent with a limitation to frequent fingering and handling. Likewise, given the evidence and [Plaintiff's] reports of symptomology concerning Crohn's disease, the undersigned finds that due to the frequency of bowel movements, [Plaintiff] will be off task 5 percent of the workday, exclusive of regularly scheduled breaks. Likewise, the record indicates the regular use of narcotic pain medications. Given this, the undersigned finds that the exertional limitations above are appropriate.

(Tr. at 24-25.)

Although, as set out above, the ALJ added limitations in the present case, a comparison of the updated RFC with that issued on January 14, 2021 reveals that the ALJ also omitted at least one prior RFC limitation. In particular, the prior RFC allowed Plaintiff "the latitude to alternate between sitting and standing every sixty minutes" (Tr. at 82), while the current RFC contains no similar restriction (Tr. at 19). Plaintiff argues that "the ALJ did not articulate an adequate and supportable explanation for the increase in [Plaintiff's] ability to maintain posture pursuant to Albright and AR 00-1(4) as required in the Fourth Circuit" specifically with respect to "removing the temporal requirement on [Plaintiff's] ability to make postural changes hourly." (Pl's Br. at 4-5.) However, contrary to Plaintiff's assertions, the ALJ in this case expressly found that:

> The new evidence made available suggests some *improvement* in the claimant's overall condition since the prior decision. He is no longer obese, with body mass indices remaining under 30 throughout the current period under review. His Crohn's remains dormant, and it appears that his resumption of Humira as a biologic agent to guard against recurrent fistulas is largely effective. The claimant is noted as experiencing only [] a single small fistula in March 2022, in contrast to prior records finding more frequent events. His testimony regarding the frequency of bowel movements conflicts with these records and reports to his doctors, as well as his statements at hearing that he is able to attend his children's sporting events. The residual functional capacity permits off-task time in deference to his complaints, though he worked with this condition for several years without apparent issue.
>
> In addition, the claimant under[went] a multilevel cervical fusion surgery in September 2021 that, while leaving him with some residual symptoms affecting his neck and left shoulder, is noted as improving most of the pre-surgical symptoms he experienced. He remains on narcotic pain medications but reports no side effects from these drugs even into 2023. Physical examinations find little more than tenderness and a reduced range of motion in his cervical spine, while recent images find no issues involving the fusion.

8

> The claimant's preexisting lumbar level degenerative disc disease receives little care during the current period, with only occasional abnormalities appearing on physical examinations. There are few complaints regarding this impairment during treatment visits.

(Tr. at 23 (emphasis in original).) Thus, the ALJ expressly acknowledged the obligation under Albright and AR 00-1(4) and considered the prior decision but found "some *improvement* in [Plaintiff's] overall condition since the prior determination." (Tr. at 23.) The ALJ then explained that (1) Plaintiff was no longer obese; (2) Plaintiff's Crohn's disease generally was under better control and that his use of Humira had all but eliminated his frequent, recurrent perianal abscesses and fistulas; (3) Plaintiff's multilevel cervical fusion surgery in September 2021 was successful and resolved many symptoms; (4) physical examinations during the relevant period, after the prior decision, found little more than tenderness and reduced range of motion in his cervical spine; and (5) Plaintiff's lumbar degenerative disc disease received little care during the current period, with only occasional abnormalities and few complaints during treatment visits.[4] All of the above factors prove relevant to Plaintiff's Albright claim,

---

[4] The record includes substantial evidence to support these findings. For example, with respect to Plaintiff's lumbar degenerative disc disease, the monthly records during the relevant period from Plaintiff's pain management provider, Restoration Medical Clinic, note examinations reflecting neck pain and limited range of motion in the neck, but no complaints of lower back pain, and the provider's "Assessments" in 2021 and 2022 reflect only "Cervicalgia" and "Chronic pain syndrome", and later "Carpal tunnel syndrome," but do not include lumbar pain or knee pain. (Tr. at 500, 504, 507, 511, 514, 517, 521, 524, 529, 532, 535, 538, 541, 711, 714, 717, 720, 723-24, 847, 852, 856, 860, 864.) In contrast, records from that same provider during the earlier period in 2019 and 2020 reflect assessment of "Radiculopathy, lumbosacral region" and "pain in left knee" and "pain in right knee", in addition to cervicalgia. (Tr. at 555, 558, 561, 564, 567, 570, 574, 577, 580-81, 594, 597.) Further, as noted by the ALJ, the examination records during the relevant period reflect normal strength and normal, non-ataxic gait, with negative straight leg raising testing. (Tr. at 20, 500, 503, 510, 520, 723, 729, 932, 939, 446.) The ALJ concluded that these records reflected that Plaintiff "retains the capacity for work at the light exertional level." (Tr. at 24.)

and Plaintiff makes no challenge to the ALJ's analysis of the record or the ALJ's subjective symptom analysis.[5]

The ALJ also relied, in part, on the most recent findings of the State agency medical consultants. (Tr. at 23-24.) Although the ALJ found the consultants' opinions only "partially persuasive," he primarily did so because the overall evidence supported "some further limitations," including more stringent limitations on fingering. (Tr. at 23-24, 108, 120-21.) However, neither State agency consultant included limitations on Plaintiff's ability to sit or stand. (Tr. at 108, 120.) The ALJ noted that the state agency consultants' assessments were supported by explanation, including "normal gait and strength" but with limited range of motion in the neck. (Tr. at 23-24.) The ALJ found that the state agency's findings were consistent with the evidence, again noting the records of Plaintiff's normal, non-ataxic gait, normal strength, and the nature of the treatment. (Tr. at 24.)

Plaintiff does not challenge the substance of the ALJ's determination, instead basing his challenge on a failure to consider the prior decision. However, the Court concludes that the ALJ followed the requirements of <u>Albright</u> and AR-0(4) and specifically considered the prior decision and explained the reasons for deviating, based on Plaintiff's improvements in many respects as noted above, while also adding other restrictions to account for increased

---

[5] Plaintiff does cite to an MRI from March 2020. (Pl.'s Br. at 7 (citing Tr. at 354-55).) However, Plaintiff's doctors described that lumbar MRI as "unremarkable" and "benign," and the report itself notes "mild lumbar spondylosis" with "[n]o high-grade stenosis or impingement." (Tr. at 446, 451, 462.) The records reflect a "flare" of Plaintiff's back pain in February 2021, when he "bent forward and had acute pain in his low back", but it was "mildly improving." That record notes Plaintiff's "historically benign lumbar MRI" and attributes Plaintiff's back pain to muscle pain. (Tr. at 446.) Plaintiff's subsequent visits with that provider do not reflect any further complaints of or assessment of low back pain. (Tr. at 444, 442, 443, 440, 941.) The ALJ specifically considered the March 2020 MRI as well as a subsequent MRI in February 2021 showing "appropriate alignment with appropriate lordosis and no severe height loss or arthropathy" (Tr. at 21, 446), as well as subsequent records reflecting "few complaints" regarding his low back on treatment visits and normal physical examinations. (Tr. at 23, 20-21.)

limitations in his fingering, as well as time off task due to symptoms of his Crohn's disease. The ALJ included sufficient reasoning to explain his decision, and Plaintiff has not identified an error that requires remand.

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is AFFIRMED, that Plaintiff's Dispositive Brief [Doc. #12] is DENIED, that Defendant's Dispositive Brief [Doc. #13] is GRANTED, and that this action is DISMISSED with prejudice.

This, the 24th day of March, 2025.

Joi Elizabeth Peake
United States Magistrate Judge